| Minute Order Form (06/97) | | | |
|---|---|---|---|
| **United States District Court, Northern District of Illinois** | | | |
| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
| **CASE NUMBER** | 00 C 8128 | **DATE** | 9/25/2002 |
| **CASE TITLE** | Leslie A. Rivera vs. John E. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [13-1] is granted. Judgment entered in favor of defendant John E. Potter and against plaintiff Leslie A. Rivera.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 26 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | G·Y. docketing deputy initials | 30 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 9/25/2002 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

| | |
|---|---|
| LESLIE A. RIVERA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 00 C 8128 ) |
| JOHN E. POTTER, POSTMASTER GENERAL, | ) Judge Joan H. Lefkow ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Leslie Rivera ("Rivera"), brings this action against defendant, John Potter ("Potter"), Postmaster General, alleging in Count I that the United States Postal Service ("USPS") discriminated against her because of her disability in violation of the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, and in Count II that the USPS retaliated against her for filing a "Notice to File an Individual Complaint" with the USPS' Equal Employment Opportunity ("EEO") officer. The court has jurisdiction over the claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 791. Before the court is Potter's motion for summary judgment. For the reasons set forth below, the court grants the defendant's motion for summary judgment

### SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The

30

party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

Rivera worked for the USPS from May 1997 to April 2000. Prior to working for the USPS, Rivera was employed in a variety of jobs, including cashier, switchboard operator, bank teller and administrative clerk. The USPS employed Rivera as a "flat sorter." Postal employees working in that position alternated among several tasks, including sorting and "keying" mail, tagging and replacing mail tubs, inspecting mail sorting and "ledging."[1] (Def. L.R. 56.1 ¶ 6.)

Shortly after Rivera started working as a flat sorter in 1997, she began to experience pain in her hands and wrists. Rivera claims that the pain in her hands and wrists prevents her from chopping onions, walking her dog, deep cleaning her home, and working with a keyboard for six to eight hours a day. (Def. L.R. 56.1 ¶ 13.) In an effort to alleviate the pain while working for

---

[1] "Keying" is typing zip codes into a key pad approximately the size of the numeric section of a computer keyboard. "Ledging" is lining up stacks of mail for the machine operators to sort and key into the machine. (Def. L.R. 56.1 ¶ 6.)

2

the USPS, Rivera wore splints and decreased the weight of the mail that she lifted. (Def. L.R. 56.1 ¶ 10.) Dr. Alfonso Mejia, who treated Rivera, stated that she suffers from what "seems like carpal tunnel syndrome." (Mejia Dep. at 25.) Dr. Mejia did note, however, that he has not been able to prove that Rivera definitely suffers from carpal tunnel syndrome. (Def. Resp. to Pl. L.R. 56.1 ¶ 42.)

Despite the pain, Rivera continued to work as a flat sorter and was additionally assigned to sort flat mail in the "manual letters unit," which involved no typing. (Def. L.R. 56.1 ¶ 8.) Rivera admits that she could perform all aspects of both jobs–flat sorter and manual letter worker–albeit with some pain. (Def. L.R. 56.1 ¶ 11.) After leaving the USPS, Rivera accepted a position with the Veterans Administration, where she is employed as a clerk-typist and works forty-hours a week. (Def. L.R. 56.1 ¶ 12.)

On October 11, 1999, Rivera signed a "Notice of Right to File an Individual Complaint" with the USPS' EEO officer. On December 5, 1999, Lawrence Montgomery ("Montgomery"), one of Rivera's supervisors and the Manager of Distribution Operations, disciplined Rivera for attendance problems. (Def. L.R. 56.1 ¶ 15.) On March 23, 2000, Rivera filed her discrimination complaint with the USPS. (Def. L.R. 56.1 ¶ 14.) After no final decision was made on Rivera's claims within the statutory period, she filed the instant law suit in federal court. In Count I, Rivera claims that the USPS discriminated against her based on her disability of chronic tendinitis and carpal tunnel syndrome. In Count II, Rivera alleges that Montgomery retaliated against her when he suspended her for poor attendance on December 5, 1999.

# ANALYSIS

Potter argues that summary judgment should be granted on each of the two Counts. For Count I, Potter argues that summary judgment is appropriate because there is no evidence that Rivera is substantially limited in any major life activity and, thus, Rivera cannot show that she is disabled under the Rehabilitation Act. For Count II, Potter argues that Rivera's retaliation claim must fail because the manager who disciplined Rivera had no knowledge that Rivera had filed an EEO claim.[2]

## A.     Count I Rehabilitation Act Claim

In Count I, Rivera claims that the USPS discriminated against her under the Rehabilitation Act by failing to accommodate her disability. The Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, prohibits recipients of federal funds from discriminating against an otherwise qualified individual based solely on that individual's disability. *Sanchez v. Henderson*, 188 F.3d 740, 744 (7th Cir. 1999). Thus, to succeed on her claim under the Rehabilitation Act, Rivera must show that she is disabled. *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th

---

[2]In his reply brief, Potter moves this court to strike numerous paragraphs of Rivera's statement of additional facts. The court briefly addresses these paragraphs, with the exception of Emma Springs' affidavit dealt with *infra*. Potter argues that paragraphs 20-29 and 31-32 of plaintiff's 56.1 statement of additional facts should be stricken as irrelevant because they deal with Rivera's supervisors' failure to accommodate her alleged disabilities. Potter argues that this issue is irrelevant to the issue they have moved for summary judgment on, namely whether Springs is disabled. *See Lippert Mktg., Ltd. v. Kingwood Ceramics, Inc.*, No. 95 C 6490, 1998 WL 699023, at *11 (N.D. Ill. Oct. 5, 1998) (Guzman, J.) (striking portions of 12N(3)(b) statement because paragraphs were immaterial and irrelevant). The court does not strike paragraph 32 where Rivera states that she previously could type longer than she can now. This is not evidence of accommodation but it does bear on whether Rivera is now disabled.

Potter also moves to strike portions of Rivera's affidavits that contradict prior deposition testimony. *See Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995) (ordering contradictory affidavits to be disregarded). In her deposition, Rivera states that in her current job she does data entry as up to 50% of her responsibilities. Paragraph 21 of her affidavit will be allowed to stand because she merely adds that this data entry is not constant, can be done at her own pace, and there is no pressure. The court does, however, strike paragraph 15 of Rivera's affidavit, in which she states that she can only do data entry 2 hours a day. This contradicts Rivera's deposition testimony that she does data entry up to 50% of the day.

4

Cir. 1995). Disability is defined in the Americans with Disabilities Act ("ADA"), which both parties agree provides the same standards for entitlement to benefits as does the Rehabilitation Act.³ Under the ADA, a disability is:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Therefore, to prove that she has a disability, under (A) on which she relies, Rivera must show: (1) she suffers from an impairment; (2) the impairment affects major life activities; and (3) the impairment "substantially limits" such major life activities. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683 (7th Cir. 2000).

The parties do not dispute that Rivera suffers from an impairment. Thus, Rivera must show that her impairment substantially limits a major life activity. A major life activity is an activity of central importance to daily life. *Toyota Motor Mfg., Kentucky, Inc., v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 691 (2002). ADA regulations provide the following representative list of major life activities: caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning and working. 29 C.F.R. § 1630.2(i).

Rivera claims that she is unable to engage in the major life activities of walking her dog, playing golf, bowling, chopping onions for cooking, cleaning her home, ironing clothes and performing data entry work for six to eight hours a day, all of which fit under the rubric of

---

³Courts determining eligibility under the Rehabilitation Act often rely on ADA precedent in reaching their decisions. *See, e.g., Mays v. Principi*, – F.3d –, 2002 WL 2019361, at *2 (7th Cir. Sept. 5, 2002); *Stein v. Ashcroft*, 284 F.3d 721, 725 n.2 (7th Cir. 2002); *Siefken v. Village of Arlington Hts.*, 65 F.3d 664, 666 n.1 (7th Cir. 1995).

"manual tasks."[4] Further, Rivera claims that because of the necessity to do data entry work in a broad range of jobs, her impairment substantially affects the major life activity of working.

Rivera's argument that walking her dog, bowling and golfing should be considered major life activities is unavailing because the courts have soundly rejected such arguments. *See, e.g., Moore v. J.B. Hunt Trans., Inc.*, 221 F.3d 944, 951 (7th Cir. 2000) (in dicta, noting that argument by plaintiff that bowling was a major life activity would not be meritorious); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998) (holding that golfing is not a major life activity); *Cade v. Consol. Rail Corp.*, No. 98-5941, 2002 WL 922150, at *10 (E.D. Penn. May 7, 2002) (DuBois, J.) (holding that bowling is not a major life activity); *Hanson v. Prairie Material Sales*, No 00 C 1574, 2001 WL 1105097, at *8 (Sept. 20, 2001) (Darrah, J.) (holding that playing sports is not a major life activity); *Hazeldine v. Beverage Media, Ltd.*, 954 F. Supp. 697, 703-04 (S.D.N.Y. 1997) (finding plaintiff who could not walk dogs more than a block not disabled). Activities such as golfing, bowling, and walking dogs—or recreation in general—do not have the same significance as the listed major life activities, including breathing, hearing and learning. *Sinkler*, 209 F.3d at 684 ("consider unlisted activities in contrast to listed activities to determine whether the unlisted activity has equal 'significance.'"). In short, while important to many people, recreational activities are not treated as of central importance to one's daily life under the ADA.

---

[4]Rivera classifies chopping onions, cleaning her home and ironing as household chores, which the Supreme Court has reasoned may be considered manual tasks under the ADA regulations if "of central importance to daily life." *Toyota Motor*, 122 S.Ct. at 693. Rivera also claims that her recreational activities, including walking her dog, golfing and bowling should be considered major life activities even though they are not included on the "illustrative" list. The court separates these for purposes of discussion but believes they all qualify as manual tasks in that they do not implicate complex reasoning skills but can be performed with simple instructions.

6

With regard to Rivera's claims that her activities of chopping onions, cleaning and ironing are major life activities, in *Toyota Motor*, the Supreme Court recently articulated the standard for assessing whether an individual is substantially limited in performing "manual tasks" under the ADA. The Court concluded that the proper inquiry under the "manual tasks" regulation is to examine whether the claimant is "unable to perform the variety of tasks central to most people's lives . . . ." *Toyota Motor*, 122 S.Ct. at 693. The Court listed the following as examples of "manual tasks" with central importance to people's lives: household chores, bathing and brushing one's teeth. *Id.*

Because chopping onions, deep cleaning and ironing are all household chores, Rivera presents at least some evidence to show that her ability to perform household chores is affected. But Rivera still must pass the next hurdle: showing that she is "substantially limited" in the major life activity of performing household chores. The term "substantially limited" means:

> [u]nable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(i). Factors to be considered in determining whether an individual is substantially limited in a major life activity include: (i) the nature and severity of the impairment; (ii) the expected duration of the impairment; and (iii) the permanent or long term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). The determination is to be made on a case-by-case basis. *Toyota Motor*, 534 U.S. at 692. Nevertheless, the Court in *Toyota Motor* was clear that the standard is "demanding" lest "everyone with a physical impairment that

7

precluded the performance of some isolated, unimportant or particularly difficult manual task" qualify as disabled. *Id.* at 691.

The court is persuaded that Rivera's evidence is insufficient to raise a genuine issue of material fact as to the "substantially limited" issue. Rivera proffers that prior to developing her impairment, she chopped onions for cooking approximately three times a week, and that this would take five minutes each time. Since developing her impairment, Rivera chops onions for cooking only once a week, and it takes about twenty minutes each time. (Pl. L.R. 56.1 ¶ 36.) Additionally, Rivera argues that before her impairment, she ironed clothes every week, and that it took 10 minutes to iron a shirt or blouse. Currently, Rivera irons fewer clothes, takes more clothes to the dry cleaners and takes approximately 30 minutes to iron each shirt or blouse.[5] (*Id.* ¶ 37.) Plainly, tasks that require physical force with the arms are more difficult than before, which is without doubt an inconvenience, but these tasks are not centrally important to an average person's daily life. Neither does the evidence demonstrate that Rivera is unable to perform a wide variety of other household chores, also pointing to a conclusion that she is not "*significantly* restricted as to the condition, manner or duration" under which she can perform household chores as compared to the average person. 29 C.F.R. § 1630.2(j)(1) (emphasis added).

Finally, Rivera alleges that her inability to work on a keyboard affects her major life activity of working, which is expressly included on the list of ADA regulations. 29 C.F.R. 1630.2(i). Where an individual claims to be unable to perform the major life of working, the term "substantially limits" is defined differently. Substantially limits means:

---

[5] Rivera presents no evidence as to the differences in the amount of cleaning that she can perform now as compared to before her impairment.

8

significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). *See also Sutton* v. *United Airlines*, 527 U.S. 471, 489-93 (1999).

Thus, a plaintiff must show not that the impairment causes an inability to perform a single, particular job, but that "the impairment. . .substantially limit[s] employment generally." *Stein* v. *Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002), citing *Contreras* v. *Suncast Corp.*, 237 F.3d 756, 762 (7th Cir. 2001).

Additionally, ADA regulations require a showing that the claimant is unable to work in a "class of jobs" or a "broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i). A "class of jobs" is "the job from which a claimant was disqualified, as well as all other jobs utilizing similar training, knowledge, and skills within 'the geographical area to which the [claimant] has reasonable access.'" *EEOC* v. *Rockwell Int'l Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001) citing 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(B). A "broad range of jobs in various classes" is "the job from which a claimant was disqualified, as well as all other jobs not utilizing similar training, knowledge, and skills within 'the geographical area to which the [claimant] has reasonable access.'" *Id.*, citing 29 C.F.R. § 1630.2(j)(3)(ii)(A), (C).

While quantitative vocational data addressing the number of alternative jobs in a particular area is not necessary, there must be "some proof of the 'number and types of jobs' within the 'geographical area to which the claimant has reasonable access.'" *Id.* (citations omitted). Rivera presents no evidence in the record that her carpal tunnel syndrome or tendinitis

makes her unable to work in a class of jobs or a broad range of jobs in the geographical area, and thus she cannot claim that her major life activity of working is impaired.

Because no genuine issue of material fact exists concerning whether Rivera qualifies as disabled, summary judgment is granted as to Count I.

**B.     Count II Retaliation Claim**

In Count II, Rivera alleges that she was retaliated against when Montgomery, Manager of Distribution Operations, disciplined her for attendance problems two months after Rivera signed a Notice of Right to File an Individual Complaint. To establish a cause of action for retaliation, a plaintiff must show that: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action." *Cole* v. *Chicago Tribune Co.*, No. 96 C 3320, 2000 WL 656644, at *11 (N.D. Ill. May 23, 2000) (Gottschall, J.) citing *Essex* v. *United Parcel Serv.*, 111 F.3d 1304, 1309 (7th Cir. 1997).

Potter admits that Rivera signed a Notice of Right to File an Individual Complaint on October 11, 1999, and that Montgomery approved discipline against Rivera on December 5, 1999. Potter claims, however, that there is no causal connection between the two events because Montgomery had no knowledge that the EEO Complaint had been filed. Montgomery himself claims that he had no knowledge that Rivera filed any EEO Complaints. (Montgomery Aff. ¶ 2.) In addition, when asked if Montgomery knew about the EEO complaint, Rivera responded in her deposition that "I don't think so. I don't believe he did. I didn't tell him, I didn't walk up to him and say I did this." (Rivera Dep. at 110.) Also, when asked if she had given Montgomery the

complaint personally, Rivera stated that "I didn't give anything to Mr. Montgomery." (Rivera Dep. at 109.)

Rivera contends that a genuine issue of material fact still exists based on the affidavit of Emma Springs ("Springs"). Springs, a Union steward, stated that the USPS' policy is to inform Managers of Distribution Operations of all EEO Complaints, and thus Montgomery should have been aware of the complaint when filed.[6]

While Rivera does present evidence that Montgomery may have been aware of the EEO complaint, she still does not establish a causal connection between her discipline and the filing of her complaint. To establish a causal link between the protected activity and the adverse employment action, Rivera must present evidence that the USPS "would not have taken the adverse employment actions 'but for' [the] protected expression." *Basith* v. *Cook County*, 241 F.3d 919, 933 (7th Cir. 2001). There is no evidence in the record to show that the USPS' employment actions would not have occurred "but for" Rivera's protected expression. Therefore, her retaliation claim must fail.

---

[6]Potter argues that Springs' affidavit should be stricken because Rivera did not identify Springs in response to Potter's interrogatory asking for "all persons with knowledge or information relating to any claim or defense in this action, any fact alleged in the pleadings, or any other fact relevant to this action." (Def. Reply at 2, Ex. A.) When examining Rivera's responses contained in exhibit A, Rivera responded to question 1 by stating "[s]ee Plaintiff's amended rule 26 disclosures, section A. Plaintiff expects to call all individuals listed in A as witnesses." The court cannot, however, locate plaintiff's amended rule 26 disclosures in the record. Thus, the court is not presented with any evidence that Springs was not disclosed as a person with relevant knowledge in the interrogatory answers. Therefore, the court will not strike Springs' affidavit from the record.

11

## CONCLUSION

For the reasons stated above, the court grants Potter's motion for summary judgment [#13]. The clerk is instructed to enter judgment in the defendant's favor.

ENTER: _____

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 25, 2002